**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **JACK NEWBERRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 2:14-cv-00024** |
| | ) | **Judge Sharp / Frensley** |
| **v.** | ) | |
| | ) | |
| **SHERIFF W.B. MELTON, et al.,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

Pending before the Court is a Motion for Summary Judgment filed by Defendants W.B. Melton, Shannon Harvey, and Rodney Phillips, in their individual capacities ("Individual Defendants"). Docket No. 46. In support of their Motion, the Individual Defendants have filed a Memorandum of Law (Docket No. 48), a Statement of Undisputed Facts (Docket No. 49), excerpts from the Depositions of Ashley Deck (Docket No. 50-1), Debbie Deck (Docket No. 50-2), Shannon Harvey (Docket No. 50-3), Judy Parrigin (Docket No. 50-4), Justin Due (Docket No. 50-5), Jack Newberry (Docket No. 50-6), Ethan Bean (Docket No. 50-7), Christy Beed (Docket No. 50-8), Lisa Ledbetter (Docket No. 50-9), Donny Allred (Docket No. 50-10), Patricia Hensley (Docket No. 50-11), Joshua Densmore (Docket No. 50-12), and Rodney Phillips (Docket No. 50-13), the Declarations of Justin Due (Docket No. 55) and Joshua Densmore (Docket No. 56), and the Declarations with exhibits of Shannon Harvey (Docket Nos. 52, 54-1 - 54-21) and Rodney Phillips (Docket Nos. 53, 54-22).

Plaintiff has filed a Response in Opposition to the Individual Defendants' Motion for

Summary Judgment (Docket No. 59) that is supported by a Memorandum of Law (Docket No. 61), a Response to the Individual Defendants' Statement of Undisputed Facts (Docket No. 68), Plaintiff's own Statement of Material Facts (Docket No. 69), the Declaration of Jack Newberry (Docket No. 62-1, p. 138-39), and numerous other exhibits, including excerpts from the Depositions of Debbie Deck (Docket No. 62-1, p. 15-23), Ashley Deck (Docket No. 62-1, p. 24-30), W.B. Melton (Docket No. 62-1, p. 35-43), Patricia Hensley (Docket No. 62-1, p. 44-50), Ethan Bean (Docket No. 62-1, p. 51-57), Nicholas Franklin (Docket No. 62-1, p. 59-69), Travis Melton (Docket No. 62-1, p. 70-80), Thurman Bolinger (Docket No. 62-1, p. 81-88), Justin Due (Docket No. 62-1, p. 89-94), Donnie Allred (Docket No. 62-1, p. 95-103), Lisa Copeland (Docket No. 62-1, p. 104-09), Christy Beed (Docket No. 62-1, p. 110-15), and Jack Newberry (Docket No. 62-1, p. 127-35).

The Individual Defendants have filed a Reply (Docket No. 77) and a Response to Plaintiff's Statement of Material Facts (Docket No. 78).

Plaintiff, who is epileptic, filed his Amended Complaint in this action pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs by, *inter alia,* (1) not providing him with his anti-seizure medication for the first month of his incarceration; (2) not providing him with his oral potassium supplement pills; (3) not providing any assistance or stabilization for him during his seizures; (4) not providing first aid or other medical attention to Plaintiff's gashes, scrapes, bruising, black eyes, concussion, strained ligaments, and other injuries incurred during his seizures; and (5) not sending Plaintiff for examination by a physician who could ascertain why his seizures were increasing in frequency, intensity, and duration, in violation of his Fourth, Eighth, and Fourteenth Amendment rights.

Docket No. 26.  Plaintiff sues Overton County, Tennessee as the entity responsible for the

remaining named Defendants' actions in their official capacities, and he sues the remaining

named Defendants in their individual capacities as well.  *Id*.[1]

In addition to the stated general allegations against all Defendants, Plaintiff specifically

avers that the instant Defendants, in their individual capacity, violated his rights as follows:[2]

> 20.  During one particularly bad episode, Shift Sgt. Rodney Phillips
> dragged [him] out of his cell on a mattress, down a hallway and
> into a booking cell, where he left [Plaintiff] by himself.  During
> another particularly bad seizure in the same cell, when [Plaintiff]
> regained consciousness, he found himself face-down in a dirty
> drain located on the floor of the cell, his face so disfigured from
> swelling and discoloration that he demanded Sgt. Phillips take a
> photograph of his face, which Sgt. Phillips proceeded to do.
> Instead of offering medical assistance, [Plaintiff] could hear Sgt.
> Phillips tell other deputies that Sgt. Phillips should "just grab him
> by the head and drag him around the booking area."
> . . .
>
> 22.  On October 14, 2013, [Plaintiff] contacted defendant Harvey,
> the jail administrator, via the Overton County Corrections Division
> grievance complaint form "to explain the situation" about what the
> county could do to alleviate the constant, intense seizures.
> However, defendant Harvey refused to see [Plaintiff], saying his
> was a medical problem that she could not help with.
>
> 23.  Thereafter, [Plaintiff] attempted to contact Overton County
> Sheriff W.B. Melton about the recurring seizures by filling out an
> Overton Country grievance complaint form.  However, [Plaintiff]
> received no response from defendant Melton.
> . . .

---

[1] Overton County, Tennessee was added as a Defendant in Plaintiff's Amended
Complaint.  *See* Docket No. 26.  It does not appear, however, that Overton County, Tennessee
has been served, nor has anyone made an appearance or filed anything on its behalf.

[2] Because Plaintiff's official capacity claims against the Individual Defendants would be
claims against Overton County, the undersigned will not set forth Plaintiff's specific averments
against the Individual Defendants in their official capacities herein.

25. [Plaintiff's] family contacted defendant Melton about the constant seizures. However, they were told that defendant Melton would not talk to them because he could not discuss inmate health concerns with "outside individuals."

. . .

46. Defendant Harvey, under color of law, violated [Plaintiff's] constitutional rights as guaranteed by the 4th, 8th, and 14th Amendments to the U.S. Constitution by deliberately and intentionally failing to provide first aid or other medical attention to the Plaintiff's serious medical condition;

47. With callous indifference, defendant Harvey refused to provide assistance to the plaintiff for serious injuries that were obvious, that is, frequent and intense grand mal epileptic seizures, and, the ensuing aftermath - black eyes, a concussion, gashes, cuts, abrasion, and strained arms and ligaments. [Plaintiff] only wanted to see a physician who could ascertain why [he] experienced seizures in such a large number and with such intensity and duration. Defendant Harvey failed to ensure that [Plaintiff] receive any medical treatment whatsoever.

. . .

50. Defendant Melton, under color of law, violated [Plaintiff's] constitutional rights as guaranteed by the 4th, 8th, and 14th Amendments to the U.S. Constitution by deliberately and intentionally failing to provide first aid or other medical attention to the plaintiff's serious medical condition;

51. Defendant [Melton] refused to provide assistance to the plaintiff for a serious injury that was obvious, that is, frequent and intense grand mal epileptic seizures, and, the ensuing aftermath - black eyes, a concussion, gashes, cuts, abrasion, and strained arms and ligaments. [Plaintiff] only wanted to see a physician who could ascertain why [he] experienced seizures in such a large number and with such intensity and duration. Defendant Melton failed to ensure that [Plaintiff] receive any medical treatment whatsoever.

. . .

54. Defendant Phillips, under color of law, violated [Plaintiff's] constitutional rights as guaranteed by the 4th, 8th, and 14th Amendments to the U.S. Constitution by deliberately and intentionally failing to provide first aid or other medical attention

to the plaintiff's serious medical condition;

> 55.  Defendant [Phillips] refused to provide assistance to the plaintiff for serious injuries that were obvious, that is, frequent and intense grand mal epileptic seizures and, with callous indifference only wanted to see a physician [*sic*] who could ascertain why [Plaintiff] experienced seizures in such a large number and with such intensity and duration.

*Id.*

Plaintiff contends that his seizures continued until he transitioned to the Bledsoe County Correctional Facility, where he was immediately permitted to see a physician who changed his medication.  *Id.*  Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial, as well as "an order compelling Overton County to comply with Tennessee Corrections Institute and American Correctional Association standards regarding medical treatment of inmates and to properly train personnel and revamp its policies with regard to medical care for inmates," reasonable attorney's fees, costs, and other further relief as the Court deems just and proper.  *Id.*

The Individual Defendants filed their Motion for Summary Judgment and supporting materials arguing that they are entitled to a judgment as a matter of law regarding Plaintiff's claims against them in their official capacity because they were never served in their official capacity.  Docket No. 48.

Addressing Plaintiff's individual capacity claims against them, Defendants Harvey and Melton argue that they are entitled to a judgment as a matter of law because Plaintiff cannot sue them simply for being responsible for the actions of the corrections officers, since respondeat superior is not a basis for the imposition of liability under § 1983, and the specific allegations

Plaintiff levies against them are insufficient to establish that either of them "encouraged the specific incident of misconduct or in some other way directly participated in it."[3] *Id.*, *citing Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

As to Plaintiff's general allegations of a lack of care by the corrections officers, the Individual Defendants argue that in each and "every instance where officers were notified that [Plaintiff] was undergoing a seizure, the officers responded and ensured that he was on his side. They additionally ensured that he was far away from situations which could harm him." *Id.* The Individual Defendants further argue that, "Once the seizures were over, staff checked him. In the event that [Plaintiff] was injured, they gave him a sick call form to complete to see the nurse and/or transported him to booking for observation," and they assert that "[i]f the injuries were serious, the officers contacted the nurse and then followed her recommendations." *Id.* The Individual Defendants contend that because: (1) they promptly responded and took steps to prevent Plaintiff from further injuring himself until his seizures ended; (2) they checked on him following the seizures to ensure that he had not suffered injuries; (3) in the event that Plaintiff had suffered injuries, they notified medical personnel and followed their instructions; and (4) Plaintiff was monitored following seizures during which he was injured, they did not violate Plaintiff's constitutional rights. *Id.*

The Individual Defendants also assert that they are entitled to qualified immunity, and they contend that Plaintiff has failed to exhaust his administrative remedies regarding "most of

---

[3] Defendant Harvey contends that Plaintiff's only allegation against her was that she refused "to explain the situation about what the County could do to alleviate the constant, intense seizures." Docket No. 48, *quoting* Docket No. 26, ¶ 22. Defendant Melton contends that Plaintiff's only allegation against him is that Plaintiff had attempted to contact Defendant Melton concerning his seizures but Defendant Melton would not respond. *Id., citing* Docket No. 23.

the claims in this matter." *Id.* They further contend that Plaintiff has alleged only de minimis injury and has failed to show actual damage allegedly caused by the Individual Defendants. *Id.* Finally, the Individual Defendants maintain that "[t]his matter should be deemed frivolous pursuant to 28 U.S.C. §1915(g)." *Id.*

Plaintiff responds that genuine issues of material fact exist that should preclude summary judgment in favor of the Individual Defendants. Docket No. 59. Specifically, Plaintiff contends that the Individual Defendants "point to 15 seizure episodes in the Summary Judgment Motion in which the officers allegedly responded appropriately, demonstrating no indifference to [Plaintiff's] medical needs. However, the testimony of at least five witnesses, two of whom are Defendant[s'] witnesses, reveals that [Plaintiff] actually experienced many more seizures than was documented in his Overton County Jail files, and that staff repeatedly failed to respond when he did experience seizures." *Id., referencing* testimony of Officer Lisa Copeland, Officer Justin Due, Nicholas Franklin, Travis Melton, and Thurman Bollinger.

As to Defendant Harvey, Plaintiff argues that he asked her "to intervene in asking the jail's medical staff to treat him," but "[s]he told him she was not a doctor and could not make a call." *Id.* Plaintiff asserts that, "[a]s the person who was responsible for ensuring that all policies, rules, regulations, orders, and procedures are enforced and implemented, she could have seen to it that [Plaintiff] was referred to an outside specialist." *Id.* Plaintiff maintains that Defendant Harvey's written response to him essentially articulating that nothing could be done for him was insufficient, *inter alia*, because she had been notified of the frequency and duration of Plaintiff's seizures, but failed to even inquire whether the seizures were being treated, because there were a number of things that could have been done to treat Plaintiff, and because the Jail's

own Standing Orders define seizures as a medical emergency, such that she should have sent Plaintiff for a consultation with a neurologist. *Id.*, *citing* General Orders, p. 75.[4]  Plaintiff further maintains that Defendant Harvey failed to train officers: (1) how to respond to his seizures; (2) how to document seizures; (3) how to ensure the medical staff knew about each of his seizures; and (4) how to prevent inmates with seizure-like symptoms from being locked alone in a jail cell. *Id.*

As to Defendant Melton, Plaintiff contends that he was "subjectively aware that [Plaintiff] was suffering from untreated seizures by the October 27, 2013 grievance form that [Plaintiff] appealed to him." *Id.*[5]  Plaintiff further contends, "[h]aving defined seizures as a medical emergency in the Jail's General Orders, Sheriff Melton then failed to train correctional officers in the proper response to [Plaintiff's] seizures - even such common sense notions as calling 911 when the duration and severity of the seizure warranted calling emergency responders." *Id.*

Plaintiff additionally argues that because the right to needed medical care is a

_____

[4] Plaintiff's citation to page 75 of the General Orders appears to be a typographical error, as the section defining seizures as a medical emergency actually appears on page 73 of those Orders.

[5] Plaintiff also argues that "Overton County is a properly-served defendant in this matter" (Docket No. 61, p. 17, n. 3), but there is no indication in the record that Overton County has been served.  Plaintiff argues that personal service upon Defendants Melton, Shannon, and Phillips in their individual and official capacities is sufficient to consider Overton County as having been "a properly-served defendant in this matter." *Id.* at 24-27.
With regard to Overton County, Plaintiff argues that: (1) its policy of inadequate training and supervision caused his injury; (2) it had no official policy to document Plaintiff's seizures; (3) it acquiesced to failing to ensure that medical staff followed-up on the seizures that had been documented by the officers; (4) it acquiesced to failing to train its officers on how to identify seizures constituting a medical emergency; and (5) it was its custom to lock Plaintiff alone in a cell instead of taking him to booking or to "med watch." *Id.* at 17-22.

constitutional right, the Individual Defendants who denied or delayed Plaintiff's right to his

needed medical care are not entitled to qualified immunity. *Id.* Specifically, Plaintiff contends:

> The question then becomes which of the individual
> Defendants were subjectively aware that [Plaintiff] was being
> deprived of his medical care. Jail Administrator Shannon Harvey
> subjectively knew that [Plaintiff] was being deprived of his rights
> because he communicated with her in a grievance form. In
> addition, Mr. Franklin also communicated with Ms. Harvey twice
> not only that the nurses were not responding to [Plaintiff] but also
> that [Plaintiff] had stopped breathing and his fellow inmates
> thought he was going to die. Accordingly, Ms. Harvey is not
> entitled to summary judgment.
> Mr. Phillips was subjectively aware that [Plaintiff] was
> being deprived of his rights as he drug [Plaintiff] down a hall and
> left him in a booking cell after [Plaintiff] was found to have injured
> himself during a seizure.
> Sheriff Melton was subjectively aware that [Plaintiff] was
> suffering from untreated seizures by the October 27, 2013
> grievance form that [Plaintiff] appealed to him.

*Id.*

Addressing the Individual Defendants' argument that Plaintiff failed to exhaust his

administrative remedies in violation of the PLRA, Plaintiff asserts that the PLRA requires the

exhaustion of "such administrative remedies '*as are available*.'" *Id., citing* 42 U.S.C. § 1997e(a)

(emphasis added). Plaintiff argues that the Individual Defendants "readily admit" that there was

no formal grievance policy "on paper," and that, although "inmates were allegedly 'made aware'

of the grievance policy," "there's nothing in the Declaration of Shannon Harvey (D.E. 52) or

supporting exhibits that say exactly how inmates were made aware" of the grievance policy, and

Plaintiff testified that he was never made aware how the Overton County Jail grievance policy

was supposed to work. *Id.*, *citing* Plaintiff's Dec., ¶ 4. Plaintiff additionally argues that the

Overton County Inmate Grievance Form itself is non-PLRA compliant on its face because it:

(1) did not state that the form was the sole method utilized in registering a grievance; (2) made no reference to the PLRA; (3) did not state the grievance was mandatory for any purpose; and (4) failed to indicate that in order to exhaust the administrative process, it was necessary to appeal to Sheriff Melton. *Id.* Plaintiff contends that Overton County correctional officers would not give him a grievance form because he was told medical issues were nongrievable, but when Plaintiff did grieve one of his seizure episodes, Defendant Harvey told him that she "was not a doctor and could not make a call." *Id.* Plaintiff maintains that because there was no written policy for him to know otherwise, he thought Defendant Harvey had the final determination on grievances and he was led to believe that no one at the jail had the authority to intervene with his medical needs except the medical staff who were not treating him. *Id.* Plaintiff argues, therefore, that his claims should be permitted to proceed at this stage of the litigation. *Id.*

Turning to the Individual Defendants' arguments that Plaintiff has alleged only de miminis injury, Plaintiff responds that the injuries he sustained as a result of his seizures included gashes, scrapes, bruising, black eyes, concussion, strained ligaments, and other injuries - injuries which are not de mimimis and for which he should have received immediate medical attention. *Id.* Plaintiff further asserts that "he was made to endure seizures of unimaginable length and intensity for months at a time," such that he has sufficiently alleged injury. *Id.* Finally, Plaintiff fervently contends that this action is not frivolous, and notes that he has supported his contention of deliberate indifference with numerous depositions and documents. *Id.*

The Individual Defendants, in their Reply, argue that summonses were never issued for any official capacity claims, so it would have been impossible for them to have been served in

such capacity, and they reiterate their contention that they were not properly served in their official capacities. Docket No. 77. The Individual Defendants note that Overton County itself has never been served and has never entered an appearance. *Id.* The Individual Defendants further note that, in their Answer to the Amended Complaint, they placed Plaintiff and his counsel on notice and raised the affirmative defense that they had not been served in their official capacities. *Id., citing* Docket No. 28. Alternatively, the Individual Defendants argue that Plaintiff cannot sustain an official capacity claim against them. *Id.*

The Individual Defendants further reply that even if Plaintiff's allegations are true, the failure of jail personnel to document seizures on the jail log does not equate to deliberate indifference to a serious medical need, such that Plaintiff cannot sustain his claim. *Id.* The Individual Defendants additionally argue that Plaintiff has failed to specifically identify who failed to report seizures and on which day(s). *Id.* They argue that they are to document incidents which pose (or may pose) a threat to security and/or safety within the jail, and contend that this documentation is not for medical purposes; they note also that "there are occasions when it is simply not possible to document everything that takes place at the Jail given the circumstances. The Jail is a very eventful place." *Id.*

The Individual Defendants additionally argue that inmates can complete an Inmate Sick Call Slip and sign up to see a doctor or nurse at any time, and that they are so advised during the intake process. *Id.* The Individual Defendants contend that Plaintiff did complete numerous Inmate Sick Call forms during his incarceration, and note that there "were many instances in which he refused the forms, or simply did not seek medical attention for himself." *Id.* They maintain that "Plaintiff had access to medical treatment and knew how to obtain it." *Id.* They

contend that they have a duty to provide him with the ability to obtain medical care, but they are not involved in his medical care or treatment unless it is necessary for the medical staff to make the jail staff aware of an issue or the inmate himself makes the jail staff aware. *Id.* They note that jail personnel do not follow-up with medical personnel, and maintain that Defendants Harvey and Melton "relied primarily on the inmate to obtain treatment for himself unless an emergency required officers to intervene on" his behalf, "or there were instructions by the medical staff to aid the inmate in some manner." *Id.*

The Individual Defendants also reply that Plaintiff's disagreement over the adequacy of his care does not constitute a constitutional violation. *Id.* They contend that he was offered treatment for his condition, that he declined treatment on numerous occasions, that he knew and understood that he could request to see the nursing staff, and that no jail officials denied or delayed his access to medical care. *Id.* The Individual Defendants further reply that the listing of things that Plaintiff argues they could have and should have done, such as questioning him regarding the frequency of the seizures when he took his medication as prescribed, asking him if he suffered from cluster seizures, asking him about the duration of the seizures when he was taking his medication, etc. are all questions that deal exclusively with his medical treatment and are therefore not questions that should have been posed by them as jail personnel. *Id.* They contend that those questions would have been properly posed by the medical staff. *Id.* As to Plaintiff's contentions that they should have brought him to booking or Medwatch, the Individual Defendants reply that they did bring him to booking or Medwatch when he appeared to have suffered injuries or suffered multiple seizures, but they note that Plaintiff occasionally fought them when they did so, instead wanting to be returned to his cell or taken to minimum security

for observation by the inmates. *Id.*

The Individual Defendants additionally argue they responded promptly to Plaintiff's seizures, and they assert that they never knew of an officer who failed to respond or assist when Plaintiff was having a seizure. *Id.* They also note that Plaintiff testified that he would not always seek treatment following a seizure when he had seizures before entering jail, that he was on the same medication prior to entering the jail as he was on during his incarceration, and that he suffered injuries during seizures prior to his incarceration such that "the customs, policies or practices of the Jail did not result in increased seizures and/or a greater likelihood of injury as he suffered from an increase in his seizures before his incarceration and had suffered injuries from his seizures for most of his life." *Id.*

Finally, the Individual Defendants argue that Defendants Melton and Harvey "responded to Plaintiff's grievances and advised him what he needed to do in the event that he was unhappy with his medical care," "ensured that medical care was available if requested," and "ensured that officers received training from medical staff as to the proper way to respond to a seizing inmate." *Id.* They also note that Plaintiff's sole allegation against Defendant Phillips in his individual capacity is that "he dragged plaintiff down the hall on a mat to booking for observation," but that the facts demonstrate that Defendant Phillips "did no such thing," and even if he had, "it would not have been in violation of Plaintiff's rights." *Id.* They contend, therefore, that Plaintiff's individual capacity claims against them must be dismissed. *Id.*

For the reasons set forth below, the undersigned recommends that the instant Motion for Summary Judgment (Docket No. 46) be GRANTED IN PART and DENIED IN PART. Specifically, the undersigned recommends that the Individual Defendants' Motion for Summary

13

Judgment be GRANTED with regard to Plaintiff's official capacity claims against them, as the Individual Defendants were not properly served in their official capacities; the official capacity claims against them should therefore be dismissed. The undersigned further recommends that the Individual Defendants' Motion for Summary Judgment be DENIED with regard to Plaintiff's individual capacity claims, as genuine issues of material fact exist with regard to those claims that preclude a grant of summary judgment; accordingly, Plaintiff's individual capacity claims against the instant Defendants should be permitted to proceed.

## II. Law and Analysis

### A. Motion for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## B. 42 U.S.C. § 1983

### 1. Generally

Plaintiff alleges violations of his Fourth, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket Nos. 1, 26. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S.

42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct.

1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,*

474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,*

436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of

acting under color of state law requires that the defendant in a § 1983 action have exercised

power "possessed by virtue of state law and made possible only because the wrongdoer is clothed

with the authority of state law."  *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313

U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2.  Eighth Amendment

### a.  Generally

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed,
> nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel

and unusual punishments" forbids punishments that are incompatible with "the evolving

standards of decency that mark the progress of a maturing society," or which "involve the

unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct.

285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong

test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for

the deprivation must have exhibited deliberate indifference to the inmate's health or safety.

*Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

**b. Deliberate Indifference To Serious Medical Needs**

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling*

*v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id*. (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993). There must, however, be a showing of deliberate indifference to an inmate's serious medical needs. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988), *citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976). In fact, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). The inquiry, therefore, according to the Sixth Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402, *citing Farmer v. Brennan*, 511 U.S. 825, 837, 844, 114 S. Ct. 1970, 1979, 1982-83, 128 L. Ed. 2d 811 (1994).

## C. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

(a) **Applicability of Administrative Remedies**. No action shall

be brought with respect to prison conditions under section 1983
of this title, or any other Federal law, by a prisoner confined in
any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements

of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a

prisoner to pursue his prison grievance through the final level of administrative appeal.

*Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly

stated:

Even if Plaintiff did file an initial grievance against [defendants],
he was required to continue to the next step in the grievance
process . . . . We have previously held that an inmate cannot simply
. . . abandon the process before the completion and claim that he
has exhausted his remedies . . . .

When a defendant shows that a plaintiff has not "exhausted all available state

administrative remedies," the only remaining question is whether Plaintiff's claims have been

brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42

U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff

inmate brought a lawsuit against prison officials claiming that they had used excessive force

against him. The lower court had dismissed his complaint for failure to exhaust administrative

remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his

administrative remedies because his excessive force claim did not involve a "prison condition"

within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .

Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F.3d at 643-44 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the

contours of the controversy.

. . .

For the reasons stated, we hold that the PLRAs exhaustion
requirement applies to all inmate suits about prison life, whether they
involve general circumstances or particular episodes, and whether
they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

## D.  The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the

case at bar fall within the meaning of the term "prison conditions" as used in § 1997e(a).  He is,

therefore, required to exhaust his administrative remedies as set forth in the PLRA.  Genuine

issues of material fact exist with regard to such questions as whether the Jail's grievance forms

were PLRA compliant on their face, whether the Jail had a formal written grievance policy, what

constituted exhaustion under the Jail's grievance policy, and whether Plaintiff was made aware

of the necessary steps for exhaustion.  Accordingly, summary judgment is not warranted on the

basis of failure to exhaust.

Turning to Plaintiff's official capacity claims, however, as has been noted, in complaints

alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a

public employee is equivalent to a lawsuit directed against the public entity which that agent

represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000), *citing Kentucky v.

Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985).  *See also, Frost v.

Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988).  As such, when a public

employee is sued in his or her official capacity, the claims are essentially made against the public

entity.  *Id*.  In order for the public entity to be subject to liability under § 1983, the plaintiff must

plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 41 (1989). *See also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he/she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.). The Individual Defendants, as the Sheriff, Jail Administrator, and Sergeant, are employees of Overton County. Because Plaintiff's official capacity claims against them are claims against Overton County, and because Overton County is a named Defendant in this action, summary judgment should be granted with regard to Plaintiff's official capacity claims against the instant Defendants.

Turning next to Plaintiff's individual capacity claims against the Individual Defendants, Defendant Melton is the Overton County Sheriff; Defendant Harvey is the Overton County Jail Administrator, and Defendant Phillips is a Sergeant at the Overton County Jail. Significantly, 42 U.S.C. § 1983 does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996). In order for the instant Defendants to be held liable in their individual capacities, therefore, Plaintiff must demonstrate that each Individual Defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989)

(citations omitted).  *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984), *citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.)  Conclusory allegations are not enough.  *See Street,* 886 F.2d at 1479.  *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).  Plaintiff must establish a "causal connection between the misconduct complained of and the official sued."  *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

Taking each Individual Defendant in turn, Plaintiff avers that he contacted Defendant Melton about his recurring seizures by submitting a grievance form to him, but that Defendant Melton did not respond.  Docket No. 26.  Plaintiff also avers that his family contacted Defendant Melton about his constant seizures, but they were told that Defendant Melton would not talk to them because he could not discuss inmate health concerns with outside individuals.  *Id.*  Plaintiff additionally avers that Defendant Melton failed to "provide assistance" for his seizures and their resulting injuries, failed to "provide first aid or other medical attention" to his serious medical needs, and further failed to ensure that he "receive any medical treatment whatsoever."  *Id.* Defendant Melton contends that he did respond to Plaintiff's grievance, stating that medical personnel were the ones who would make medical decisions.  *See* Harvey Declarations.

While respondeat superior does not permit the imposition of liability under § 1983, genuine issues of material fact exist with regard to such topics as whether Defendant Melton responded to Plaintiff's grievance, what Defendant Melton knew of the intensity, frequency,

duration, and treatment of Plaintiff's seizures, what Defendant Melton knew of Plaintiff's resulting injuries, what actions Defendant Melton could have or should have taken, what the scope of Defendant Melton's duties entailed, and whether Defendant Melton facilitated, assisted, delayed, or denied Plaintiff medical treatment in light of the Jail's General Orders explicitly defining seizures as a medical emergency. Accordingly, summary judgment is not warranted on Plaintiff's individual capacity claims against Defendant Melton.

Addressing Plaintiff's allegations against Defendant Harvey in her individual capacity, Plaintiff avers that he contacted Defendant Harvey via a grievance form wanting to know what the County could do to alleviate his "constant, intense seizures," but she refused to see him, saying it was a medical problem that she could not help him with. Docket No. 26. Plaintiff maintains that he "only wanted to see a physician who could ascertain why [he] experienced seizures in such a large number and with such intensity and duration," but that Defendant Harvey failed to ensure that Plaintiff receive any medical treatment whatsoever, failed to provide first aid or other medical attention, and failed to provide any assistance to him for his serious injuries. *Id.* Plaintiff contends that Defendant Harvey could have referred him to an outside specialist and that her written response to him essentially articulating that she could do nothing for him was insufficient because she had been notified of the frequency and duration of Plaintiff's seizures, because the Jail's own Orders define seizures as a medical emergency, and because she failed to even inquire whether the seizures were being treated. Docket No. 59. Defendant Harvey argues, *inter alia*, that it is Plaintiff's responsibility, not hers, to communicate with, and request assistance from, medical staff directly. Harvey Declarations.

Again, while respondeat superior does not permit the imposition of liability under § 1983,

genuine issues of material fact exist with regard to issues such as what the scope of Defendant Harvey's duties entailed, what Defendant Harvey knew of the intensity, frequency, duration, and treatment of Plaintiff's seizures, what Defendant Harvey knew of Plaintiff's resulting injuries, what actions Defendant Harvey could have or should have taken, whether Defendant Harvey facilitated, assisted, delayed, or denied Plaintiff medical treatment in light of the Jail's General Orders explicitly defining seizures as a medical emergency, and whether Defendant Harvey knew that Plaintiff was not receiving medical treatment for some of his seizures and their resulting injuries. Accordingly, summary judgment is not warranted on Plaintiff's individual capacity claims against Defendant Harvey.

Regarding Plaintiff's individual capacity claims against Defendant Phillips, Plaintiff avers that, after a particularly bad seizure episode, Defendant Phillips dragged him out of his cell and down the hall on a mattress, and left him alone in a booking cell where Plaintiff suffered another seizure. Docket No. 26. Plaintiff avers that when he regained consciousness, he found himself face down in a drain on the floor with a swollen and discolored face. *Id.* Plaintiff avers that he insisted that Defendant Phillips photograph his injuries and further avers that Defendant Phillips did not offer him any first aid or other medical assistance, or otherwise arrange for him to see a doctor. *Id.* Among other aspects, Defendant Phillips disputes that he dragged Plaintiff on a mat from his cell to booking, that Plaintiff's injured eye occurred as a result of a seizure that happened while he was in the booking cell, and that Plaintiff was not monitored while in the booking cell. Phillips Declaration.

Genuine issues of material fact exist in such areas as whether Defendant Phillips should have taken Plaintiff to MedWatch or somewhere other than booking after his seizure, whether

Defendant Phillips should have left Plaintiff alone in the booking cell after his seizure, whether Plaintiff was being monitored or checked on while he was in the booking cell, whether Defendant Phillips should have gotten medical assistance for Plaintiff's injuries. Accordingly, summary judgment is not warranted for Plaintiff's individual capacity claims against Defendant Phillips.

As discussed, the Individual Defendants have also raised the defense of qualified immunity. Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). The initial inquiry and threshold question, according to the Supreme Court, is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.*, *citing Siegert v. Gilley,* 500 U.S. 226, 232, 111 S. Ct. 1789, 1973, 114 L. Ed. 2d 277 (1991). If no constitutional right was violated, there is no necessity for further inquiry. *Id.* While the right to adequate medical care is an established constitutional right (*Estelle, supra*), in light of the undersigned's finding that genuine issues of material fact exist with regard to Plaintiff's individual capacity claims against the instant Defendants, at this point in the litigation, the undersigned reaches no determination as to whether the Individual Defendants are entitled to qualified immunity.

### IV.  Conclusion

For the foregoing reasons, the undersigned recommends that the instant Motion for Summary Judgment (Docket No. 46) be GRANTED IN PART and DENIED IN PART. Specifically, the undersigned recommends that the Individual Defendants' Motion for Summary Judgment be GRANTED with regard to Plaintiff's official capacity claims against them, as the

Individual Defendants were not properly served in their official capacities; the official capacity claims against them should therefore be dismissed. The undersigned further recommends that the Individual Defendants' Motion for Summary Judgment be DENIED with regard to Plaintiff's individual capacity claims, as genuine issues of material fact exist with regard to those claims that preclude a grant of summary judgment; accordingly, Plaintiff's individual capacity claims against the instant Defendants should be permitted to proceed.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


JEFFERY S. FRENSLEY
United States Magistrate Judge